IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 14-0461-WS-B |
| | ) | |
| PRESBYTERIAN RETIREMENT | ) | |
| CORPORATION, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on plaintiff's Motion for Expedited Hearing of Motion for Appointment of Receiver (doc. 5).

On October 2, 2014, plaintiff, PNC Bank, N.A., filed a pleading styled "Complaint Seeking Payment of Contractual Debt, Recovery of Collateral, and For Appointment of a Receiver" (doc. 1), along with more than 600 pages of exhibits, motions and legal memoranda.[1] The Complaint names as defendants Presbyterian Retirement Corporation, Inc. ("Presbyterian") and The Special Care Facilities Financing Authority of the City of Daphne (the "Authority"). Presbyterian operates (and the Authority owns) Westminster Village, a continuing care retirement community in Spanish Fort, Alabama.

According to the Complaint, PNC Bank is the holder of notes issued by defendants and bonds issued to defendants, which notes and bonds are secured by a mortgage and security interest on the Westminster Village property. PNC Bank maintains that Presbyterian has defaulted on its obligations under the governing bond documents. On that basis, PNC brings claims against Presbyterian for breach of contract (seeking damages of nearly $7 million in outstanding bond principal, plus attorney's fees, collection costs and interest) and payment of swap documents (seeking damages in excess of $1.3 million, plus attorney's fees, collection

---

[1] This action was originally assigned to another District Judge, but was reassigned to the undersigned's docket on the afternoon of October 3, 2014.

costs and interest). Of particular relevance to the pending Motion for Expedited Hearing are Counts Three and Four of the Complaint, which demand appointment of a receiver, both in equity and at law. Through these claims, PNC Bank contemplates that this Court will appoint a receiver to take over the management and operation of Westminster Village until "a going concern buyer is found for the facility." (Doc. 1, at 2.)[2]

By way of explanation for its demands for a receiver, PNC Bank alleges that it "is concerned that the residents and patients of [Westminster Village] receive appropriate treatment and services" and cites an October 2013 federal inspection, in which Westminster Village received an overall rating of 2 stars (out of a possible 5 stars). (Doc. 1, ¶¶ 38-39.) Without elaboration, PNC Bank alleges that "[i]t is apparent that the Property has been mismanaged, resulting in injury to and waste of the property." (*Id.*, ¶ 42.) In addition to these purported resident/patient care concerns, PNC Bank alleges that Presbyterian's "financial condition is unstable," although it acknowledges that Presbyterian "is able to pay most of its bills at this moment through an accommodation from" another creditor. (*Id.*, ¶ 38.) However, PNC Bank insists that it will not provide a similar accommodation, and suggests that the other creditor will not continue to do so, with the net result being that Presbyterian "will soon not be able to pay its operating bills." (*Id.*)

Included in the voluminous documentation that PNC Bank placed in the court file on October 2, 2014 are a 25-page Motion for Appointment of Receiver (doc. 3), a 16-page Brief (doc. 4) in support of that Motion, a 22-page proposed Order (doc. 3, Exh. A), and five multi-page supporting Affidavits (doc. 3, Exhs. B-F). Along with these materials, PNC Bank has filed a "Motion for Expedited Hearing," in which it requests a hearing on the Motion for Appointment of Receiver "as soon as this Court's calendar will allow." (Doc. 5, at 1.) In support of this request, PNC Bank references the circumstances described above, asserts that "[t]he need here is urgent," states that it "seeks a hearing in about a week," and indicates its expectation that both counsel for Presbyterian and a representative from the proposed receiver will attend. Thus, the proposed expedited hearing would involve PNC Bank's counsel traveling from Birmingham, Presbyterian's counsel traveling from Birmingham, and a representative of the receiver traveling

---

[2] PNC Bank alleges that it has commenced power of sale foreclosure proceedings on the property, with the foreclosure sale scheduled for March 27, 2015. (Doc. 1, ¶ 35.)

"from out of state" (doc. 5, at 2), all on extremely short notice to be heard on the receivership appointment issues presented in Counts Three and Four of the Complaint.

After careful review of the Motion for Expedited Hearing, as well as plaintiff's other filings, the Court finds that PNC Bank has not made a sufficient showing to warrant the drastic remedy of an expedited hearing. The Federal Rules of Civil Procedure and the Local Rules work hand-in-hand to fix highly routinized pathways, timelines and procedures for processing civil actions in federal court. PNC Bank asks that this regimented, well-settled set of procedures be jettisoned, in favor of what is effectively a summary judgment hearing on Counts Three and Four potentially before defendants have even been served with process. Such a gambit would place Presbyterian (and the Authority, to the extent it may desire to be heard) at an enormous strategic and practical disadvantage, having to wade through hundreds of pages of court filings, make travel plans to Mobile, and prepare for an essentially dispositive hearing on Counts Three and Four on the fly at a moment's notice. By contrast, PNC Bank has enjoyed the benefit of unlimited lead time to craft its arguments, refine its filings, and prepare for such a hearing. It would also be extraordinarily disruptive to the Court's civil docket to allow this case to vault to the front of the line, bypassing older matters in which litigants are awaiting rulings, all because plaintiff says that "[t]he need here is urgent." Furthermore, it would place this Court in the undesirable position of having to "shoot from the hip" to preside over a hastily-called hearing without the benefit of full briefing or thoughtful prior research and deliberation, with the fate of a retirement community (and its hundreds of residents and patients) potentially hanging in the balance.

None of this is to say, of course, that emergency motions such as PNC Bank's are never permitted in federal court. They are, but they are highly disfavored. *See generally Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute"). A party like PNC Bank seeking to tilt the playing field and receive the extraordinary remedy of an immediate hearing with minimal notice must make a threshold equitable showing that some terrible harm is likely to befall it unless the Court and the defendants drop everything and take up the matter immediately. PNC Bank has not done so. To be sure, PNC Bank ominously forecasts that Presbyterian "will soon not be able to pay its operating bills" (apparently because PNC Bank is

refusing to make an accommodation to Presbyterian).[3] But there is no indication in the record as to when "soon" is. Certainly, PNC Bank has made no showing that Presbyterian will become financially unable to continue operating Westminster Village during, say, the next 30 days, a reasonable estimate of the time needed for proper briefing and resolution of the receivership issue. Nor has PNC Bank presented substantial evidence of "injury to and waste of the Property" (doc. 1, ¶ 42) of such an urgent nature that accelerated adjudication of the Motion for Appointment of a Receiver might be needed to preserve the collateral.[4]

If, as PNC Bank says, "[t]he paramount interest of all concerned is to provide adequate health care and related services to all residents and patients" (doc. 1, at 1-2), then surely that paramount interest is best served by not issuing a kneejerk, precipitous ruling on such weighty questions as whether Presbyterian will be allowed to continue operating Westminster Village, or whether the receiver nominated by PNC Bank should be given the reins.[5] Rather, that paramount

---

[3] A representative of PNC Bank has averred that plaintiff "is willing to consider advancing funds to maintain operations of [Westminster Village], but only on certain terms and conditions and only to an independent receiver for the Property acceptable to PNC Bank." (North Aff. (doc. 3, Exh. B), ¶ 34.)

[4] On this point, PNC Bank indicates that Presbyterian has informed it that "some" of the 250 independent living units at Westminster Village "need major repairs to be capable of habitation," but that Presbyterian is not making those repairs because of its financial status. (North Aff., ¶ 6.) This evidence is far too vague to support a claim of injury to or waste of the property. How many is "some" units? 3? 5? 20? What "major repairs" are needed? Not all maintenance conditions at a property result in injury or waste in the absence of immediate remediation. This showing is far too speculative to warrant expedited consideration of plaintiff's request for appointment of receiver. Similarly, PNC Bank's assertion that Westminster Village "should have a greater value as a going concern than if it were closed" (doc. 1, ¶ 41), while undoubtedly plausible, rings hollow as a basis for accelerated treatment of the receivership issue, in the absence of evidence that closure of the facility is imminent. Besides, PNC Bank's filings suggest that it has the power to prevent any such "waste and injury" by advancing funds to Presbyterian; however, it chooses not to do so (as is its right). At some level, then, plaintiff is requesting emergency relief for a situation of its own creation.

[5] To be sure, the calculus could be different if there were evidence that Presbyterian were neglecting patients and residents, or managing Westminster Village in such a manner that they were in imminent danger. No such evidence of immediate jeopardy to the safety and health of Westminster Village's patients and residents has been presented. The only indication provided by PNC Bank of purportedly "deteriorating" conditions or "mismanagement" of the facility is a federal inspection conducted in 2013. PNC Bank provides no insights into the current status of conditions "on the ground" at Westminster Village and has given the Court no
(Continued)

interest is best served by proceeding on the Motion for Appointment of Receiver in a thoughtful, orderly manner that allows every party a reasonable opportunity to study the issue and to be heard on all of its dimensions and ramifications, without being thrust headlong into an artificial, high-stakes pressure cooker. Plaintiff has come forward with no evidence and no reason to believe that Westminster Village will suffer catastrophic harm during the approximately 30-day interval required to litigate and decide the Motion for Appointment of Receiver under an ordinary timetable. Stated differently, plaintiff has not shown why the interests of justice favor deviation from normal protocols by setting an emergency hearing on the Motion right now.

What's more, plaintiff's filings confirm that the adverse circumstances that it contends create a need for urgent, expedited relief have been known to it for quite some time. For example, the alleged defaults date back to at least January 2014, and the federal inspection cited by PNC Bank as proof of "mismanagement" was dated October 2013. Yet plaintiff refrained from filing its Complaint until October 2, 2014. Such a course of conduct is inconsistent with the present hue and cry for an expedited remedy. *See generally Beame v. Friends of the Earth*, 434 U.S. 1310, 1313, 98 S.Ct. 4, 54 L.Ed.2d 23 (1977) ("The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm.") (Marshall, J.); *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2nd Cir. 1995) (where plaintiff seeking immediate, emergency relief delays in bringing suit, such delay may preclude emergency relief because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury") (citation omitted); *Mobile County Water, Sewer and Fire Protection Authority, Inc. v. Mobile Area Water and Sewer System, Inc.*, 2007 WL 3208587, *6 & n.11 (S.D. Ala. Oct. 29, 2007) (collecting cases for proposition that "plaintiff's long history of inaction in the face of actual knowledge of defendant's [complained-of conduct] appears fundamentally incompatible with its present cries of irreparable harm"); *Love v. Blue Cross and Blue Shield of Arizona, Inc.*, 2010 WL 1249120, *5 (S.D. Fla. Mar. 25, 2010) (plaintiff's delay in filing motion seeking extraordinary relief undermines "theory that there is an urgent need for

---

reason to believe that the health and safety of residents/patients will be compromised unless the Motion for Appointment of Receiver is heard and decided immediately.

speedy action to protect the plaintiffs' rights") (citation omitted); *Kensington Partners v. Cordillera Ranch, Ltd.*, 1998 WL 1782540, *11 (W.D. Tex. June 16, 1998) ("[d]elay in bringing suit undercuts the sense of urgency").[6] Plaintiff's conduct in delaying, then demanding an expedited hearing that disadvantages defendants, also conflicts with the maxim that "a litigant who seeks equity must do equity." *In re U.S. Lines, Inc.*, 318 F.3d 432, 437 (2nd Cir. 2003).

For all of the foregoing reasons, plaintiff's Motion for Expedited Hearing of Motion for Appointment of a Receiver (doc. 5) is **denied**. That said, the Court will not allow the Motion for Appointment of Receiver to languish. To that end, defendants are **ordered** to file a response (supported by exhibits and legal authority, as appropriate) to that Motion on or before **October 21, 2014**. Plaintiff will be allowed until **October 28, 2014** to file a reply. (On or before that same date, plaintiff must e-mail an electronic copy – in Microsoft Word format – of the lengthy proposed Order found at Exhibit A to the Motion to the following email address: *efile_steele@alsd.uscourts.gov*.)[7] If the Court determines that an evidentiary hearing is necessary to resolve disputed issues of fact, the parties will be notified and a hearing will be scheduled during early November. Otherwise, the Motion will be taken under submission after **October 28, 2014**.

Plaintiff is **ordered** to undertake all reasonable measures to ensure that a copy of this Order is delivered to defendants' counsel by no later than **October 9, 2014**, and to file a notice of compliance demonstrating that it has done so.

DONE and ORDERED this 7th day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Court recognizes that many of these cases involve motions for temporary restraining order or preliminary injunction under Rule 65. This case does not; however, the analogy is fitting and appropriate. After all, much like a Rule 65 motion, PNC Bank is requesting an immediate ruling and an immediate remedy on the merits of Counts Three and Four, from the very inception of this litigation.

[7] This requirement is imposed pursuant to § II.E.4 of the *Administrative Procedure for Filing, Signing, and Verifying Documents by Electronic Means in the United States District Court for the Southern District of Alabama*. All parties are reminded that this e-mail address is not to be utilized to communicate with the Court except as provided in § II.E.4, or as otherwise directed by the undersigned.