IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 14-0461-WS-C |
| | ) | |
| PRESBYTERIAN RETIREMENT | ) | |
| CORPORATION, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter comes before the Court on the Motion of Infirmary Health System, Inc. to Intervene (doc. 11). The Motion has been briefed and is now ripe.

I.    Relevant Background.[1]

Defendant Presbyterian Retirement Corporation, Inc. ("Presbyterian") operates Westminster Village, a continuing care retirement community in Spanish Fort, Alabama.[2] Some years ago, Presbyterian borrowed large sums of money, both through direct loans made by the predecessor of plaintiff, PNC Bank, N.A. ("PNC Bank"), and through revenue bonds under which its repayment obligations were guaranteed by putative intervenor Infirmary Health System, Inc. ("Infirmary Health"). With respect to the latter, Presbyterian is contractually bound

---

[1] In-depth recitation of the facts and circumstances precipitating this litigation is not necessary to understand and adjudicate the pending Motion to Intervene; rather, a broad sketch will suffice. To be clear, the Court makes no findings of fact at this early stage, but simply culls what appear to be uncontested facts from pleadings and briefs submitted to date. Insofar as any party disputes the accuracy of any fact set forth herein, rest assured that there will be ample opportunity to litigate that issue at a later date. This statement of "facts" is neither final nor binding on anyone.

[2] This facility is owned by defendant The Special Care Facilities Financing Authority of the City of Daphne (the "Authority"). For purposes of the pending Motion to Intervene, it is unnecessary to address the Authority's status and involvement; therefore, this Order will not otherwise reference or discuss the Authority.

to reimburse Infirmary Health for payouts under that guaranty, and has granted Infirmary Health a mortgage on and a security interest in Westminster Village and other collateral. Likewise, Presbyterian has promised to repay the PNC Bank direct loans, and has granted PNC Bank a mortgage on and a security interest in Westminster Village and other collateral.

Both the revenue bonds guaranteed by Infirmary Health and the direct loans made by PNC Bank matured more than a year ago, at which time they were subject to balloon payment requirements. Presbyterian did not make (and was evidently unable to make) those balloon payments, thereby placing it in default as to both sets of obligations. When the bondholders called upon Infirmary Health to fulfill its guaranty commitments, it did so, paying out nearly $13.5 million in September 2014 to satisfy in full Presbyterian's outstanding indebtedness on those bonds. Infirmary Health now looks to Presbyterian to reimburse it for that guaranty payment. Similarly, PNC Bank contends that Presbyterian owes it more than $6.8 million in unpaid principal on certain bonds, as well as an additional $1.3 million on certain swap obligations, all apparently relating to its direct loans.

As a result of the foregoing events, Presbyterian is in default of its payment obligations to PNC Bank and Infirmary Health, both of which are secured creditors of Presbyterian and mortgagees as to Westminster Village. For its part, PNC Bank commenced this lawsuit against Presbyterian on October 2, 2014, seeking to exercise certain remedies under the relevant contracts, including expedited appointment of a receiver to manage Westminster Village pending a contemplated foreclosure sale that PNC Bank has noticed for March 2015. To that end, contemporaneously with the filing of its Complaint, PNC Bank filed a Motion for Appointment of Receiver, requesting that this Court appoint a receiver on both legal and equitable grounds to take immediate possession and control of Westminster Village. (*See* doc. 3.) To accompany that Motion, PNC Bank filed an extensive proposed order that would, among other things, empower the receiver to market and sell Westminster Village and to file a bankruptcy petition on Presbyterian's behalf. (*See* doc. 3, Exh. A.) That proposed order also would enjoin all persons, firms and corporations (including Infirmary Health) from taking steps to enforce any lien or mortgage as to Westminster Village, absent express court permission to do so. (*Id.*) In filing its Complaint and seeking immediate appointment of a receiver, PNC Bank neither named Infirmary Health as a party nor obtained Infirmary Health's consent. For its part, Infirmary Health opposes all of PNC Bank's activities described herein.

On October 14, 2014, a mere 12 days after PNC Bank filed the Complaint and Motion for Appointment of Receiver, Infirmary Health filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. In this filing, Infirmary Health expresses profound disagreement with PNC Bank's proposed strategy of appointing a receiver to manage Westminster Village, insisting that the pathway charted by PNC Bank would impair the value of this facility rather than preserve it, thereby damaging Infirmary Health's interests in such collateral. Moreover, Infirmary Health asserts that PNC Bank's actions of unilaterally noticing a foreclosure sale and moving for appointment of receiver are in violation of a December 2005 Intercreditor Agreement that governs their relative priorities, rights and duties with respect to the collateral, including Westminster Village. On that basis, Infirmary Health requests leave to intervene in this matter to protect its rights and interests as a secured creditor, to oppose the appointment of a receiver, to bar PNC Bank from relying on or enforcing any aspect of the Intercreditor Agreement, and to obtain damages for PNC Bank's purported breaches of said Intercreditor Agreement. Infirmary Health's position is that, "[g]iven IHS's significant and senior interest in the Collateral, IHS must be allowed to be heard in order for its rights and interests to be protected." (Doc. 11, at 20.)

For its part, PNC Bank asserts that Infirmary Health "is not entitled to intervene either as a matter of right or permissively in this receivership proceeding." (Doc. 22, at 5.) Despite its contention that intervention would not be proper under Rule 24, PNC Bank also states that it "does not object" to the Motion because Infirmary Health "is a uniquely-situated creditor." (Doc. 22, at 6.) Apparently, PNC Bank would have this Court grant the Motion to Intervene even as it concludes that Infirmary Health does not meet the Rule 24 criteria for intervention. Given the curious tension inherent in PNC Bank's position, it would be unwise and inappropriate summarily to grant the Motion to Intervene as unopposed. For that reason, the undersigned will scrutinize the Motion on the merits.

**II.     Analysis.**

"Rule 24 provides two avenues for a nonparty to intervene in a lawsuit; intervention as of right and intervention with permission of the court." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006). To intervene as of right pursuant to Rule 24(a)(2), a person "must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot

adequately protect that interest." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).[3] Thus, the three-pronged inquiry for a timely Rule 24(a)(2) motion consists of the following: (i) whether Infirmary Health has shown that it has an interest in the subject matter of this lawsuit; (ii) whether Infirmary Health has shown that its ability to protect such interest may be impaired by disposition of the suit; and (iii) whether Infirmary Health has shown that existing parties cannot adequately represent its interest. *See* Rule 24(a)(2), Fed.R.Civ.P. (intervention as of right is required where a person "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

With regard to the first element, the question is whether Infirmary Health's "interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1249 (11th Cir. 2002); *see also Bayshore*, 471 F.3d at 1246 ("[t]he prospective intervenor must demonstrate an interest relating to the property or transaction which is the subject of the action if relying on Rule 24(a)") (internal quotation marks and emphasis omitted). Court documents reflect that Presbyterian owes Infirmary Health more than $13 million, that it defaulted on that payment obligation, and that this indebtedness is secured by a mortgage on Westminster Village in Infirmary Health's favor. PNC Bank brought this Complaint seeking appointment of a receiver to assume control of Westminster Village. Given that Infirmary Health's interest in Westminster Village is direct, substantial and legally protectable, and given that the value (and, indeed, the fate) of this facility hangs in the balance in this litigation, it cannot seriously be questioned that the first element of the Rule 24(a)(2) test is satisfied. *See generally WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 996 (10th

---

[3] A Rule 24(a) motion must also be timely. *See, e.g., Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002) ("Before a party can intervene as a matter of right, it must timely move to intervene."). Infirmary Health's Motion to Intervene is timely under any reasonable construction of the term. After all, Infirmary Health submitted its Motion less than two weeks after the Complaint was filed. No defendant had yet filed a responsive pleading. No discovery had been initiated. No substantive rulings had been issued. This litigation will not be delayed in the slightest, and no party will be prejudiced, by the short interval that elapsed between the filing of the Complaint and the Motion to Intervene. Accordingly, the Court readily concludes that the Motion is timely.

Cir. 2009) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.") (citation omitted).

The second element requires Infirmary Health to demonstrate that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Rule 24(a)(2). The Eleventh Circuit has explained that, "[w]here a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply the practical disadvantage which warrants intervention as of right." *Georgia*, 302 F.3d at 1258 (citation omitted). Such is the case here. Infirmary Health maintains that the appointment of a receiver will "diminish[] the operating prospects of [Presbyterian] and thus the value of [Westminster Village]," thereby substantially impacting (and, in Infirmary Health's view, harming) the collateral in which it possesses a secured interest. Once the receiver has been appointed, it may be difficult or impossible for Infirmary Health to undo this alleged harm via subsequent legal proceedings. Thus, it appears beyond cavil that disposition of this action may as a practical matter impair or impede Infirmary Health's ability to protect its interest in Westminster Village.

As for the third and final element, Infirmary Health bears the burden of showing that the existing parties to this action do not adequately represent its interest. "But this is not an onerous burden." *Defenders of Wildlife v. Bureau of Ocean Energy Management*, 2010 WL 5139101, *3 (S.D. Ala. Dec. 9, 2010); *see also Georgia,* 302 F.3d at 1255 ("The proposed intervenor has the burden of showing that the existing parties cannot adequately represent its interest, but this burden is treated as minimal.") (citations and internal quotation marks omitted).[4] PNC Bank submits that Infirmary Health's Motion to Intervene founders on this requirement, because its interest may be "adequately protected by a receiver through procedures supervised by the district court allowing creditors to file claims and object to the receiver's actions." (Doc. 22, at 5.) But what about Infirmary Health's interest in Westminster Village not going into a forced

---

[4] Indeed, a putative intervenor "need only show that the current [defendants'] representation may be inadequate, … and the burden for making such a showing is minimal." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (citation and internal quotation marks omitted); *see also Defenders of Wildlife*, 2010 WL 5139101, at *3 (finding that putative intervenor had satisfied "inadequate representation" element of Rule 24(a)(2) by demonstrating that existing defendant's representation of intervenor's interest "*may* be inadequate, despite the obvious overlap between them").

receivership in the first place? PNC Bank does not address that critical point, which goes to the heart of the pending request for intervention.

More broadly, any suggestion that Infirmary Health's interest in this case will be adequately represented by existing parties is demonstrably incorrect. Although PNC Bank is similarly situated to Infirmary Health in the sense that both are secured creditors to which Presbyterian owes millions of dollars, it is well documented that these two secured creditors have vastly divergent opinions as to what should happen next. PNC Bank wants a receiver appointed immediately, with Westminster Village going on the auction block in a few months. Infirmary Health wants neither of these events to occur, but instead favors some sort of workout, restructuring or orderly sale that allows stability and continuity of operations at Westminster Village. Under the circumstances, it is painfully obvious that PNC Bank cannot and will not adequately represent Infirmary Health's interest. By the same token, the notion that Presbyterian might protect Infirmary Health's interest because they both oppose receivership may have superficial appeal, but breaks down when one considers Presbyterian's $13+ million indebtedness to Infirmary Health, and the clear differences in interests and litigation positions that may and likely will emerge from same. Accordingly, the undersigned is satisfied that Infirmary Health has met its light burden of showing that existing parties and any duly appointed receiver may not adequately represent its interest herein.

**III.    Conclusion.**

For all of the foregoing reasons, the Court concludes that Infirmary Health is entitled to intervene in this matter as of right, pursuant to Rule 24(a)(2), Fed.R.Civ.P. Accordingly, the Motion of Infirmary Health System, Inc. to Intervene (doc. 11) is **granted**, and movant is granted leave to intervene in this action. The Clerk of Court is directed to add Infirmary Health System, Inc. as a party defendant. The Answer and Counterclaim (doc. 12) previously submitted by Infirmary Health is deemed filed as of today's date, and the time for PNC Bank to file an answer or other responsive pleading to the Counterclaim pursuant to Rule 12(a)(1)(B), will run from today's date.

DONE and ORDERED this 4th day of November, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE